01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
07                                    AT SEATTLE

08  JUSTIN DOUGLAS HAYNES,              )    CASE NO.: C07-0828-RSM
                                        )
09            Petitioner,               )
                                        )
10       v.                             )
                                        )    REPORT AND RECOMMENDATION
11  RON VAN BOENING,                    )
                                        )
12            Respondent.               )
    _____ )

13

14                                  INTRODUCTION

15       Petitioner has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.

16  Respondent has filed a motion to dismiss, raising the statute of limitations as a bar to the Court's

17  consideration of the petition.  Petitioner has not filed a response to respondent's motion.  Having

18  reviewed the petition, respondent's motion, and the balance of the record, the Court concludes,

19  as set forth below, that the petition should be dismissed as untimely pursuant to 28 U.S.C. §

20  2244(d).

21                                  BACKGROUND

22       The Washington Court of Appeals summarized the facts in petitioner's case as follows:

REPORT AND RECOMMENDATION
PAGE -1

In late 1997, Child Protective Services received a report that Justin Haynes had sexually and physically abused his eight-year-old stepdaughter, M.D. After an investigation, the State charged Haynes with two counts of first degree rape of a child and one count of fourth degree assault.

In exchange for Haynes's agreement to plead guilty, the State reduced the charges against him. Haynes pleaded guilty to two counts of first degree child molestation. The State agreed to recommend to the court that Haynes receive a sentence at the upper limit of the standard sentence range.

The parties appeared before the trial court for a sentencing hearing on May 14, 1999. At that time, Haynes requested and the court granted a continuance of the hearing. The court also indicated that, on its own motion, it was considering imposing an exceptional sentence upward.

On June 14, 1999, the parties reconvened for an evidentiary hearing on the sentencing issue. At the beginning of the hearing, Haynes's attorney informed the court that Haynes wished to withdraw his guilty plea due to ineffective assistance of counsel. Claiming a potential conflict of interest if he continued to represent Haynes at the sentencing hearing, defense counsel asked to withdraw as Haynes's attorney. The court denied this request, but indicated that defense counsel would be permitted to withdraw after the sentencing hearing.

The court proceeded to hear testimony on the sentencing issue. Dr. Rebecca Wiester, the consulting physician for the King County Sexual Assault Resource Center's sexual assault clinic, testified. Dr. Wiester examined and interviewed M.D. in January 1998. According to Dr. Wiester, M.D. said at the interview that Haynes had touched her on her "bottom" more than once while her mother was in the hospital giving birth to her little sister, K. M.D. told Wiester that Haynes made her suck on his penis and that he "put his . . . wee-wee in my bottom." M.D. also reported various incidents of physical abuse that Haynes committed against her.

Kelly Gann, M.D.'s aunt, and Rebecca Dickey, M.D.'s mother, also testified at the hearing. Gann corroborated much of Dr. Wiester's testimony. According to Gann, M.D. told her that Haynes made her "look at dirty magazines" and made her "suck on popsicles to show me how to suck on his penis." M.D. also said that Haynes "laid in bed naked and he told me to get on top of him, and then he had sex." Gann further testified about several incidents of physical abuse by Haynes that M.D. had described to her. Dickey testified that she had witnessed Haynes physically abuse M.D. on various occasions.

Finally, Justin Haynes testified at the hearing. Haynes denied ever sexually or physically abusing M.D.

REPORT AND RECOMMENDATION
PAGE -2

01      At the conclusion of the hearing, the court imposed an exceptional sentence
02 of 178 months on each count, to run concurrently.  The standard sentence range was
   67 to 89 months on each count.  The court relied on two factors in imposing the
03 exceptional sentence.  First, the court found that Haynes "used his position of trust
   to facilitate the charged offenses."  Second, the court found that "[t]he charged
   offenses involved domestic violence, as defined by RCW 10.99.020, and were part of
04 an ongoing pattern of physical and psychological abuse of the victim."

05      With the assistance of new counsel, Haynes filed a written motion to withdraw
   his guilty plea.  He claimed that his former attorney was ineffective in advising him in
06 regard to the guilty plea, because the attorney did not inform Haynes "of the real
   possibility of an exceptional sentence in his case or of any factors (other than a
07 request by the State) which could be considered by the Court in determining whether
   or not to impose a sentence outside the standard range."  Haynes claimed that if he
08 had been so informed, he would not have pleaded guilty.

09      On July 22, 1999, the court held a hearing on the motion to withdraw the
   guilty plea.  At the conclusion of the hearing, the court denied Haynes's request to
10 withdraw his guilty plea.  The court found that Haynes was aware that although it was
   unlikely he would receive an exceptional sentence, the court had the power to impose
11 an exceptional sentence.   The court concluded that Haynes's counsel was not
   ineffective in failing to advise Haynes of the possible grounds for imposing an
12 exceptional sentence.

13 *State v. Haynes*, 2001 WL 569927 (Wash. Ct. App.; April 23, 2001).  (Doc. #10, Ex. 9).

14      Petitioner filed an appeal in the Washington Court of Appeals.  (Doc. #10, Ex. 4).  On

15 February 12, 2001, the appellate court affirmed petitioner's judgment and sentence.  (*Id.*, Ex. 6).

16 Petitioner filed a motion for reconsideration.  The Washington Court of Appeals granted the

17 motion, withdrew the original opinion, and issued an amended opinion on April 23, 2001.  (*Id.*,

18 Ex. 8 & 9).

19      The Washington Court of Appeals issued its mandate on March 1, 2002.  (*Id.*, Ex. 10).

20 Petitioner filed a motion to recall the mandate, which the court granted on February 5, 2003.  (*Id.*,

21 12).  The court then reissued the mandate with an effective date of October 30, 2002.  (*Id.*, Ex.

22 13).  The record does not reflect that petitioner sought review by the Washington Supreme Court

REPORT AND RECOMMENDATION
PAGE -3

01  of the court of appeals' decision.

02      On September 22, 2003, petitioner filed the first of several post-conviction challenges

03  ("personal restraint petition or PRP") to his sentence in Washington state court. (*Id*., Ex. 14).

04  The Washington Court of Appeals dismissed the initial PRP on April 23, 2004. (*Id*., Ex. 18). It

05  does not appear that petitioner sought review by the Washington Supreme Court of this dismissal.

06      On October 20, 2004, petitioner filed a second PRP in state court. (*Id*., Ex. 20). On July

07  8, 2005, after having stayed the PRP pending a decision in another case, the Washington Court

08  of Appeals dismissed the PRP. ( *Id*., Ex. 22). Petitioner sought review by the Washington

09  Supreme Court of the dismissal of his second PRP. (*Id*., Ex. 23). The Washington Supreme

10  Court Commissioner denied review on September 8, 2005, and the Washington Supreme Court

11  declined to modify this ruling on November 1, 2005. (*Id*., Ex. 26).

12      On April 28, 2004, petitioner filed a third PRP in state court. (*Id*., Ex. 28). This PRP was

13  consolidated with two other PRPs and all three were dismissed by the Washington Court of

14  Appeals on July 3, 2006. (*Id*., Ex. 35). Petitioner sought review by the Washington Supreme

15  Court of the dismissal. (*Id*., Ex. 36). The Washington Supreme Court denied review on May 1,

16  2007. (*Id*., Ex. 37).

17      On May 31, 2007, petitioner filed a federal habeas petition under 28 U.S.C. § 2254. (Doc.

18  #1). After receiving one extension of time, respondent filed the instant motion to dismiss on

19  August 31, 2007. (Doc. #10). Petitioner has not filed a response to the motion, and the matter

20  is now ready for review.

21                          GROUNDS FOR RELIEF

22      In his § 2254 petition, petitioner raises the following two grounds for relief:

REPORT AND RECOMMENDATION
PAGE -4

01    1. Haynes' jury trial right, notice, and due process of the law rights under the Fifth,
      Sixth and Fourteenth Amendments were violated when all of the elements of the crime
02    were not proved.

03    2. Haynes' due process rights of the Fifth and Fourteenth Amendments were violated
      when the State miscalculated his offender score which led to an unlawful and
04    excessive sentence.

05    (Doc. #1 at 6-8).

06                                    <u>DISCUSSION</u>

07          Petitions filed pursuant to 28 U.S.C. § 2254 are governed by the one-year statute of

08    limitations provided in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

09    Under AEDPA, the one-year limitation period begins to run from the latest of four possible dates:

10          (A) *the date on which the judgment became final by the conclusion of direct review or the
          expiration of the time for seeking such review*;
11

12          (B) the date on which the impediment to filing an application created by State action in
          violation of the Constitution or laws of the United States is removed, if the applicant was
13        prevented from filing by such State action;

14          (C) the date on which the constitutional right asserted was initially recognized by the
          Supreme Court, if the right has been newly recognized by the Supreme Court and made
15        retroactively applicable to cases on collateral review; or

16          (D) the date on which the factual predicate of the claim or claims presented could have been
          discovered through the exercise of due diligence.

17    28 U.S.C. § 2244(d)(1) (emphasis added).

18          In addition, "a properly filed application for State post-conviction or other collateral

19    review," such as a PRP in Washington state, will toll the statute of limitations.  28 U.S.C. §

20    2244(d)(2).

21          Here, petitioner's direct appeal concluded when the Washington Court of Appeals issued

22    its amended opinion on April 23, 2001.  Under Washington's Rules of Appellate Procedure,

REPORT AND RECOMMENDATION
PAGE -5

01 petitioner then had 30 days in which to seek review of that decision by the Washington Supreme

02 Court. *See* RAP 13.4.  However, it appears that petitioner did not seek such review.[1]

03      Accordingly, petitioner's conviction became "final," pursuant to 28 U.S.C. §

04 2244(d)(1)(A), thirty days after the amended opinion was issued, or on May 23, 2001.  This date

05 triggered the running of the one-year statute of limitations under AEDPA, which then expired on

06 May 22, 2002.[2]

07      Although petitioner filed numerous PRPs in state court, he filed them all *after* the federal

08 statute of limitations had expired.  Thus, none of petitioner's PRPs qualify under AEDPA as

09 having tolled the statute of limitations.  Nor does petitioner's habeas petition disclose any

10 extraordinary circumstances that might qualify him for equitable tolling of the statute of

11 limitations.  *See Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).  In sum,

12 by the time petitioner filed his initial PRP in state court in September 2003, AEDPA's one-year

13 statute of limitations had already expired approximately 16 months earlier, in May 2002.  Thus,

---

15      [1] Petitioner claims in his habeas petition that he did seek such review, but the Washington
16 Supreme Court "refused" his motion and denied it.  (Doc. #1 at 3).  However, in preparing the
motion to dismiss, counsel for respondent thoroughly searched the state court records and did not
17 find any proof of such action by the Washington Supreme Court.  (Doc. #10, Ex. 44).  In his
motion to dismiss, respondent invited petitioner to provide such documents, if he had any, in his
18 response to the motion.  (Doc. #10 at 16-17).  As noted earlier, however, petitioner did not file
any response whatsoever, so the record still is barren regarding petitioner's claim that he sought
review by the Washington Supreme Court of his direct appeal.

19      [2] Petitioner argues in his habeas petition that his direct appeal was not "final" until the
20 Washington Court of Appeals reissued the mandate, with an effective date of October 30, 2002.
(Doc. #1, Memorandum of Law at 13).  Petitioner is mistaken.  "[I]t is the decision of the state
21 appellate court, rather than the ministerial act of entry of the mandate, that signals the conclusion
of review."  *White v. Klitzkie*, 281 F.3d 920, 924 n.4 (9th Cir. 2002).  Thus, petitioner's direct
22 appeal became final on May 23, 2001, thirty days after the court of appeals issued its amended
opinion.

REPORT AND RECOMMENDATION
PAGE -6

01    petitioner's federal habeas petition is untimely, and respondent's motion to dismiss the petition

02    should be granted.

03                      <u>CONCLUSION</u>

04          For the foregoing reasons, petitioner's habeas petition is barred by the applicable statute

05    of limitations and respondent's motion to dismiss should be granted.  A proposed Order is

06    attached.

07          DATED this <u>28th</u> day of September, 2007.

08

09                                   Mary Alice Theiler
                                  United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -7